UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DENNIS T. HUTTO,

    Plaintiff,

v.                            Case No. 3:17-cv-461-J-39MCR

FERNANDINA BEACH POLICE
DEPARTMENT, et al.,

    Defendants.
_____

# ORDER

## I. Status

Plaintiff, an inmate of the Florida penal system, is proceeding in this action on a pro se Amended Civil Rights Complaint (Doc. 19; Amended Complaint). Plaintiff names as defendants the City of Fernandina Beach, Chief James Hurley, Sgt. Hepler, Detective William B. Evatt, Officer M. Douglass, and Officer Richie Benton. Before the Court are three motions: (1) Defendant James T. Hurley's Second[1] Motion to Dismiss (Doc. 27; Hurley Motion); (2) Plaintiff's Motion to Compel (Doc. 40; Motion to Compel); and (3) Defendants' Motion for Protective Order (Doc. 42; Motion for Protective Order).

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. Ashcroft v.Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences

---

[1] Defendant Hurley previously filed a Motion to Dismiss Plaintiff's original complaint (Doc. 12).

should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). The plaintiff must allege "enough facts to state a claim that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Though detailed factual allegations are not required to satisfy this standard, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. Indeed, allegations showing "[t]he mere possibility the defendant acted unlawfully [are] insufficient to survive a motion to dismiss." Sinaltrainal v. Coca–Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009); see also Iqbal, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting Twombly, 550 U.S. at 570). Rather, the well-pled allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Id. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680.

Pleadings submitted by a pro se plaintiff "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). Courts are under no duty, however, to "re-write" a plaintiff's complaint to find a claim. Peterson v. Atlanta Hous. Auth., 998 F.2d 904, 912 (11th Cir. 1993).

### III. Complaint Allegations

Plaintiff alleges the Defendants violated his constitutional rights when he was arrested and his vehicle was seized in connection with a hit-and-run accident that occurred inside the city limits of Fernandina Beach. Amended Complaint at 3-4. He claims he was arrested at his home on December 23, 2014, without probable cause and outside the jurisdictional limits of the Fernandina Beach Police Department (FBPD). Id. According to Plaintiff, on the day of the arrest, Defendants Hepler, Douglass, and Benton "were conducting an investigation, outside their jurisdiction, to develop probable cause for the Plaintiff's arrest." Id. at 4.

Plaintiff asserts Defendants' actions resulted in the loss of "his truck, two homes, with all their contents, and his quality of life." Id. at 8. Plaintiff states Defendants Hepler, Douglass, and Benton unlawfully, and without probable cause, arrested him and seized his truck, in violation of the Fourth Amendment. Id. Further, he claims those same Defendants violated the Sixth and Fourteenth Amendments by excluding in the arrest and booking report the exculpatory statement provided by his neighbor. Id. According to Plaintiff, he was incarcerated between December 23, 2014 (the date of his arrest) and October 27, 2016, when the charges against him were dropped. Id. at 7. As relief, Plaintiff seeks the cost of litigation, declaratory relief, and damages. Id. at 10-11.

Defendant Hurley was not present during, nor directly involved in, Plaintiff's arrest or

the seizure of his truck.² See id. Rather, Plaintiff sues Defendant Hurley in his role as Chief of the FBPD. Id. at 2. Indeed, aside from Plaintiff's identification of Hurley as a Defendant, Plaintiff's Amended Complaint contains no allegations as to Defendant Hurley's actions or inactions with respect to alleged violations. See id. The only other references to Defendant Hurley appear in two exhibits Plaintiff attached to his Amended Complaint. See Pl. Ex. P (Doc. 19-17), Ex. Q (Doc. 19-18). Specifically, Plaintiff connects Defendant Hurley to the alleged constitutional violations because Defendant Hurley, in his capacity as Chief of Police, signed a Mutual Aid Agreement (MAA) Plaintiff claims is illegal and resulted in his false arrest.

Exhibit P is a letter from Plaintiff to Defendant Hurley, dated April 25, 2016, in which Plaintiff notified (Chief) Hurley of his intention to seek damages as a result of his illegal arrest and incarceration. (Doc. 19-17; Hutto Letter). In that letter, Plaintiff asserted his arrest by FBPD officers was in violation of the MAA between FBPD and Nassau County Sheriff's Office (NCSO). Hutto Letter at 2.³ Specifically, Plaintiff wrote that a particular provision in the MAA (set forth below) "is contrary to the legislative intent of F.S. 23.125 and the agreement itself is fatally defective and illegal." Id. He further states "FBPD and NCSO do not have the legislative power to enter into such an agreement." Id.

Exhibit Q is a copy of the MAA under which Plaintiff alleges he was arrested and which Defendant Hurley signed, in his capacity as FBPD Chief of Police (Doc. 19-18; MAA). The MAA provides that NCSO and FBPD are permitted, by Florida Statutes and

---

² Defendant Evatt, similarly, was not involved in Plaintiff's arrest. Plaintiff sues Defendant Evatt in connection with forfeiture proceedings against his truck, which Plaintiff alleges Evatt initiated on January 6, 2015. Amended Complaint at 4. Plaintiff asserts Defendant Evatt violated the Sixth and Fourteenth Amendments with respect to the disposal and suppression of his truck. Id. at 9. Plaintiff alleges Defendant Evatt informed him by letter that his truck was released to a towing company about one month after his arrest. Amended Complaint at 6.

³ Page numbers reflect the pagination assigned by the Court's CM/ECF docketing system, which are found at the top of each page.

the agreement, to render aid to one another "in the form of law enforcement services and resources to adequately respond to . . . multi-jurisdictional routine law enforcement." MAA at 6. The agreement addresses "routine law enforcement" across jurisdictional lines in paragraph 5(c), which is the subsection Plaintiff directly contests in his letter to Defendant Hurley:

> In the event an officer of FBPD who is investigating a felony or a misdemeanor which occurred within FBPD jurisdiction should develop probable cause to arrest a suspect for that [crime] when the suspect is located outside the FBPD officer's jurisdiction but within Nassau County, the FBPD officer shall be empowered with the same authority to arrest said suspect as the FBPD officer would have within the political subdivision in which he or she is employed. An FBPD officer intending to effect a probable cause arrest pursuant to this paragraph should, whenever possible, request the assistance of the NCSO or other Law Enforcement Agency having jurisdiction within the area in which the arrest is to take place. Failure to request such assistance shall not, however, affect the validity or legality of any arrest made pursuant to this paragraph.

Id. at 9.

In his Amended Complaint, Plaintiff alleges the arresting officers violated the MAA. In support, he asserts Defendant Hepler testified at a hearing in connection with Plaintiff's criminal action (following his arrest) that Hepler, as one of the arresting officers, "did not contact the Nassau County Sheriff's Office prior to conducting his out-of-jurisdiction investigation and arrest of the Plaintiff," in contravention of the MAA. Id. In his Amended Complaint, Plaintiff alleges the following:

> [T]he City of Fernandina Beach and the Nassau County Sheriff's Office do not have the legislative authority to enter into an agreement that confers upon FBPD officers, jurisdictional police powers, coextensive with those of the county deputies with NCSO. . . . [Plaintiff's] arrest, made pursuant to the mutual aid agreement between NCSO and FBPD, without FBPD requesting assistance from NCSO, is contrary to Florida law and is in violation of the Plaintiff's Fourth and Fourteenth Amendment right to protection against

5

> unreasonable search and seizure and his right to due process.

Amended Complaint at 9. Plaintiff further alleges that Hepler testified the FBPD had a policy of seizing "personal property under the guise of 'the Act,'[4] and sell[ing] the seized property back to it's [sic] owner." Id. at 7.

### IV. Hurley's Motion to Dismiss

In his Motion to Dismiss, filed on June 8, 2017, Defendant Hurley argues that, to the extent Plaintiff asserts claims against him in his official capacity, those are redundant as claims against his employer (the City of Fernandina Beach), who also has been named a defendant in this action. Defense Motion at 5. Further, Defendant Hurley argues that to the extent Plaintiff asserts claims against him in his individual capacity, he is entitled to qualified immunity, and Plaintiff fails to "plead facts regarding Chief Hurley that amount to a violation or deprivation of the rights he asserts under the Fourth, Sixth, and Fourteenth Amendments." Id. Specifically, Defendant Hurley states that "none of the allegations . . . pertain to Chief Hurley. . . . [and] Plaintiff has failed to allege acts or omissions on the part of Chief Hurley." Id. at 6, 8. Defendant Hurley also argues that, to the extent Plaintiff asserts a state law claim, no allegations of any state law violation pertain to him. Id. at 10-11.

In his Response, Plaintiff concedes Defendant Hurley "has immunity in his official capacity," but contends "that immunity does not extend to [Hurley's] personal actions while performing his duties as chief of police"[5] (Doc. 29; Response). In support of his

---

[4] "The Act" refers to the Florida Contraband Forfeiture Act, Florida Statutes 932.701-707. See Amended Complaint, Ex. B (15-4).
[5] Plaintiff's recognition that Defendant Hurley is officially-immune from suit appears to reflect some confusion between suits against municipal officers in their individual versus official capacities. For reasons set forth in this Order, any confusion is not relevant to the Court's ruling.

position that he has sufficiently stated a claim against Defendant Hurley, Plaintiff directs the Court to Exhibits P and Q. Response at 1-2. According to Plaintiff, Defendant Hurley ignored his letter in which he complained that the MAA and its application to him was illegal, resulting in his false arrest. Id. Plaintiff states, "no reasonable person, in a *supervisory position*, would ignore a notice, sent in 'good faith,' that would require, not only his attention, but a response as well." Id. at 2 (emphasis added).

### A. Official Capacity Claims

As to Plaintiff's claim(s) against Defendant Hurley in his official capacity, Defendant Hurley argues such claims are duplicative of those against the City of Fernandina Beach, and this Court agrees. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 n.55 (1978) (recognizing that "official-capacity suits generally represent only another way of pleading an action against" a municipality of which the individual defendant is an agent). The City of Fernandina Beach has appeared in this case and filed an Answer on May 26, 2017 (Doc. 21). Thus, any claims against Defendant Hurley in his official capacity are due to be dismissed as duplicative.

### B. Individual Capacity Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law and (2) such deprivation occurred under color of state law. Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted). Moreover, the Eleventh Circuit "'requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation' in § 1983 cases." Rodriguez v. Sec'y, Dep't of Corr., 508 F.3d 611, 625 (11th Cir. 2007) (quoting Zatler v. Wainwright, 802 F.2d

7

397, 401 (11th Cir. 1986)). "A causal connection may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation." Zatler, 802 F.2d at 401. Defendant Hurley asserts there are no factual allegations describing how he personally participated in the acts giving rise to any alleged constitutional violations, and this Court agrees. Plaintiff's Amended Complaint includes no allegations that Defendant Hurley personally participated in his arrest or the seizure of his truck. Indeed, the only instance in which Defendant Hurley is even named or mentioned in the Amended Complaint is when Plaintiff identifies him as a Defendant. Amended Complaint at 2.

Thus, any claims against Defendant Hurley rest on Hurley's official participation in the MAA or for Hurley's failure to respond to Plaintiff's letter complaining that his arrest was unlawful. Such allegations fail to state a claim because they rest on a theory of supervisory liability (respondeat superior). The Eleventh Circuit has made clear that § 1983 claims against state agents may not be based a theory of respondeat superior. Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998) (finding supervisory liability requires something more than stating a claim of liability under a theory of respondeat superior). See also Reid v. Sec'y, Fla. Dep't of Corr., 486 F. App'x 848, 852 (11th Cir. 2012) (affirming summary judgment in favor of a defendant sued "only in his supervisory capacity" because the plaintiff made no allegations that the defendant participated in the action or that he was causally responsible for any violations). "Supervisory liability can be found when the supervisor personally participates in the alleged constitutional violation, or when there is a causal connection between the supervisory actions and the alleged deprivation." Id. "The standard by which a supervisor

is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Danley v. Allen, 540 F.3d 1298, 1314 (11th Cir. 2008) (overruled on other grounds).

In the absence of a known "history of widespread abuse," the causal connection required to establish supervisory liability can be demonstrated by alleging a supervisor adopted a policy or custom that results in the supervisor's "deliberate indifference to constitutional rights." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Keith v. DeKalb Cty., Ga., 749 F.3d 1034, 1048 (11th Cir. 2014) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)).

The closest Plaintiff comes to alleging Defendant Hurley instituted a policy or custom resulting in deliberate indifference to his constitutional rights is to the extent Defendant Hurley, in his official capacity as Chief, entered into a MAA. See Resolution 2014-135 (Doc. 19-18) at 3-4; Amended Complaint at 9. Neither Plaintiff's allegations nor the attached Exhibits demonstrate widespread abuse or existence of a policy or custom, sufficient to allege the causal connection required for supervisory liability. First, even if Plaintiff sufficiently alleged a constitutional violation, only one instance of a violation fails to demonstrate a policy or custom. See Keith, 749 F.3d at 1048. Plaintiff's Amended Complaint contains no allegations that others have been similarly unlawfully arrested pursuant to the MAA.

Furthermore, assuming the MAA, as written or as applied to Plaintiff, is invalid, a violation of state law does not support an action under § 1983. See Knight v. Jacobson,

9

300 F.3d 1272, 1276 (11th Cir. 2002) ("There is no federal right not to be arrested in violation of state law."). In his letter to Defendant Hurley, Plaintiff cites a Florida District Court opinion[6] to suggest that the MAA is illegal and resulted in his false arrest. Hutto Letter at 3. In that case, a criminal defendant filed a motion to suppress evidence, attacking the propriety of his arrest and seizure of evidence when the officers' investigation originated <u>outside</u> their jurisdiction, in clear violation of a voluntary cooperation (mutual aid) agreement. <u>See</u> <u>State v. Allen</u>, 790 So. 2d 1122, 1123-24 (Fla. 2d DCA 2001). The state court opinion, reviewing a ruling on a criminal defendant's motion to suppress, does not support a finding of a constitutional deprivation that would support Plaintiff's § 1983 action against Defendant Hurley. <u>See</u> <u>Knight</u>, 300 F.3d at 1276; <u>see also</u> <u>McDaniel v. Bradshaw</u>, No. 10-81082-CIV-COHN-Seltzer, 2011 WL 13150496, at 5 (S.D. Fla. Aug. 25, 2011) (rejecting plaintiff's argument that an arrest made in violation of a mutual aid agreement equated to a claim under § 1983), <u>aff'd</u> 491 F. App'x 981, 984 (11th Cir. 2012).

Plaintiff's allegation that FBPD had a policy of seizing "personal property under the guise of 'the Act,' and sell[ing] the seized property back to it's [sic] owner," <u>see</u> Amended Complaint at 7, is also insufficient to attribute to Defendant Hurley a policy or custom of violating rights. Importantly, Plaintiff does not allege Defendant Hurley instituted or ratified such a policy, nor does he attribute the forfeiture of his truck, or any forfeiture proceedings, to actions or inactions by Defendant Hurley. Plaintiff's allegations as to

---

[6] <u>State v. Allen</u>, 790 So. 2d 1122 (Fla. 2d DCA 2001).

Defendant Hurley's involvement, if any, relate to his alleged false arrest, not to the seizure of his truck.[7] See Amended Complaint; Exs. P, Q.

For the reasons stated above, any supervisory claim(s) against Defendant Hurley fails because Plaintiff has not alleged any facts suggesting that Defendant Hurley was personally involved in, or otherwise causally connected to, the alleged violations of Plaintiff's federal statutory or constitutional rights.[8] Therefore, Defendant Hurley's Motion is due to be granted, and the Court will dismiss Plaintiff's claims against him.

## V. Plaintiff's Motion to Compel

Plaintiff's Motion to Compel Response to Non-Party Subpoena (Doc. 40) is **DENIED**. In the Motion to Compel, Plaintiff seeks the production of documents (transcripts of hearings and depositions) from the Nassau County Clerk of Court regarding the underlying criminal action. Plaintiff independently completed and served on the Nassau County Clerk of Court six subpoenas (Doc. 40-1; Ex. A). Plaintiff also filed with this Court Notices of Civil Contempt as to the Nassau County Clerk of Court, John Crawford, for his failure to provide the "subpoenaed" documents (Docs. 38, 39).

Plaintiff's document requests to the Nassau County Clerk of Court were not proper subpoenas served in compliance with Federal Rules of Civil Procedure 45. Thus, the Clerk of Court was not legally required to respond. Rule 45 specifically states that "[a] subpoena must issue from the court where the action is pending. . . . [and] "[t]he clerk must issue a subpoena." Fed. R. Civ. P. 45(a)(2)-(3). The Rule provides that an *attorney*

---

[7] Notably, Plaintiff alleges Defendant Hepler made this statement at a hearing on April 21, 2016. In the letter to Chief Hurley, dated April 25, 2016, Plaintiff does not reference the alleged improper seizure of his truck, nor does he reference Defendant Hepler's alleged April 21, 2016 testimony. See Hutto Letter.

[8] Because the Court finds no constitutional violation, it is unnecessary to address whether Defendant Hurley is shielded from liability under a qualified immunity. See Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009).

may sign a subpoena, but only if that attorney "is authorized to practice in the issuing court." 45(a)(3). Plaintiff is proceeding pro se; he is not an attorney who may sign a subpoena. Despite proceeding pro se, Plaintiff is entitled to adhere to the applicable Federal Rules of Civil Procedure, including those related to discovery and issuance of subpoenas. See Moon v. Newsome, 863 F.2d 835, 837-38 (11th Cir. 1989); see also Order (Doc. 5) (advising Plaintiff of his obligation to follow relevant procedural rules of court). Because Plaintiff failed to comply with Rule 45, he is not entitled to relief.

## VI. Defendants' Motion for Protective Order

In their Motion for Protective Order (Doc. 42), Defendants argue Plaintiff has served a Second Request for Admissions solely for the purpose of "annoyance or oppression, or to create an undue burden on the Defendants," and seek relief pursuant to Fed. R. Civ. P. 26(c)(1)(A)-(C). Motion for Protective Order at 2. Specifically, Defendants maintain they timely responded to Plaintiff's First Request for Admissions as to each Defendant, and further maintain Plaintiff's Second Requests are largely duplicative of the first. Id. at 1.

In his Second Request for Admissions (SRFA), Plaintiff acknowledges receipt of each Defendants' response to his first set. See Motion for Protective Order, Ex. C (Doc. 42-3). In his SRFA, Plaintiff included the following notice: "Because the . . . response to the Plaintiff's First Request for Admissions . . . was not signed by the defendant[s] and notarized to insure its integrity, as required by Rule 33, the Plaintiff is serving his second request for admissions . . . in 'good faith,' to correct the insufficiencies in his first response." To the extent Plaintiff submits his SRFA solely to cure a perceived deficiency, the Defendants' Motion is due to be granted. Plaintiff's second requests, it appears, were

12

propounded based upon his misunderstanding of the Federal Rules of Civil Procedure. Rule 36, not Rule 33, applies to requests for admissions, and that rule specifically indicates that either the party *or its attorney*[9] must sign. Fed. R. Civ. P. 36(a)(3); see also Fed. R. Civ. P. 36 advisory committee's note to 1970 amendment ("The requirement that the answer to a request for admission be sworn is deleted, in favor of a provision that the answer be signed by the party or by his attorney."). Defendants' Responses to Plaintiff's First Requests for Admissions all bore their attorney's signature. See Doc. 42-2 at 6, 9, 16, 21, 29, 33.

In his Response to the Defendants' Motion for Protective Order (Doc. 43), Plaintiff again acknowledges Defendants' responses to the first set but asserts some of Defendants' objections were merely "boilerplate." See Response to Motion for Protective Order at 1. The Court notes that the Defendants provided some qualified objections in response to Plaintiff's First Requests for Admissions. See Motion for Protective Order, Ex. B (Doc. 42-2). In instances where an objection was asserted, the answering Defendant provided a substantive response subject to the objection. To the extent Plaintiff complains the Defendants' substantive responses to the Requests for Admissions were not proper, he may file an appropriate motion and memorandum of law. See Fed. R. Civ. P. 36 ("The requesting party may move to determine the sufficiency of an answer or

---

[9] The Plaintiff appears to indicate that, because he signed his response to the Defendants' Requests for Admission served on him, the Defendants, should, in turn, do the same in a spirit of fairness. See Response to Motion for Protective Order (Doc. 43) at 1-2. In addition to clarifying the applicable Federal Rules of Civil Procedure, the Court also draws Plaintiff's attention to the distinctions between pro se and attorney filings. Attorneys are governed by ethical rules imposed by the bar association and the courts to which they have been admitted to practice.

objection."). Any such motion must comply with applicable Federal Rules of Civil Procedure and this Court's Local Rules.[10]

Based on the foregoing, it is now

**ORDERED:**

1. Defendant Hurley's Motion to Dismiss (Doc. 27) is **GRANTED**.

2. All claims against Defendant Hurley are **DISMISSED**. The Clerk of Court is directed to terminate Defendant Hurley from this action.

3. Plaintiff's Motion to Compel (Doc. 40) is **DENIED**.

4. Defendants' Motion for Protective Order (Doc. 42) is **GRANTED** to the extent Plaintiff propounded them to cure an ill-perceived deficiency resulting from his misunderstanding of the applicable Federal Rules of Civil Procedure.

5. Plaintiff's Notices to the Court (Docs. 38, 39, 41, 46)[11] are stricken from the docket. Plaintiff is cautioned that he may file with the Court only proper motions that comply with the applicable Federal Rules of Civil Procedure and this Court's Local Rules.

**DONE AND ORDERED** in Jacksonville, Florida, this 2nd day of February, 2018.

_____
BRIAN J. DAVIS
United States District Judge

---

[10] The Court also cautions the Plaintiff that the purpose of requests for admissions is to narrow the disputed issues between the parties. See In re Camero Enterprises, Inc., 240 B.R. 446, 449 (Bankr. M.D. Fla. 1997) ("The purpose of . . . Rule [36] is to enable the parties and the court to narrow or eliminate issues in a case."). See also Webb v. Westinghouse Elec. Corp., 81 F.R.D. 431, 436 (E.D. Pa. 1978) ("The purpose of requests for admissions is not necessarily to obtain information, but to narrow the issues for trial.").

[11] Plaintiff filed two Notices of Civil Contempt (Docs. 38, 39), a Notice of Supplemental Authority (Doc. 41), and a Notice that the pending discovery Motions (Docs. 40, 42) are "delaying and disrupting the discovery process (Doc. 46).

Jax-6 2/1
c: Dennis Hutto, #883390
    Counsel of record